910 A.2d 553

**Frank Sam JULES**

v.

**STATE of Maryland.**

**Nos. 2035, 2377, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Nov. 1, 2006.

Matthew Wartel, Alexandria, VA, for appellant.

Cathleen C. Brockmeyer (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel DAVIS, SALMON, EYLER, JAMES R., JJ.

DAVIS, J.

The trial of appellant, Frank Jules, on charges of child sexual abuse and third-degree sexual abuse offenses, was held in the Circuit Court for Howard County (Sweeney, J.) on May

23–24, 2005. He was convicted of child sexual abuse and one count of third-degree sexual offense. On November 16, 2005, he was sentenced to two concurrent seven year terms of incarceration with all but eighteen months suspended to be served at the Howard County Detention Center. Appellant timely appealed his conviction and sentence [1] to this Court, presenting two issues, which we rephrase, for our review:

I.    Whether the Circuit Court erred by denying appellant's motion to dismiss for a violation of Md. Rule 4–271 right to speedy trial where appellant waived his right.

II.    Whether the Circuit Court erred by violating appellant's constitutional right to speedy trial after a nearly 16–month delay.

---

**1.**  Characterizing it at oral argument as a "housekeeping matter," footnote 1 in the State's brief essentially contains a motion to dismiss appellant's initial appeal, No. 2377:

> Appellant's appeal from the November 16, 2005 disposition was filed on December 12, 2005. This Court docketed that appeal as September Term, 2005, No. 2035. On the same day, [appellant] noted an appeal from the State's November 22, 2004 entry of a *nolle pros* to an earlier indictment. This Court docketed that appeal as September Term, 2005, No. 2377. On May 9, 2006, the Court granted [appellant's] unopposed motion to consolidate the two appeals and ordered that all further filings be captioned under the appeal from the November 16, 2005 disposition (Sept. Term 2005, No. 2035). The appeal from the State's entry of the *nolle pros* to the earlier indictment, entered on November 22, 2004, is, however, not properly before this Court. *See* Md. Rule 8–202 (2006). Accordingly, the State respectfully requests that this Court dismiss, as untimely, [appellant's] appeal in *Jules v. State*, September 2005, No. 2377.

> A defendant, of course, cannot appeal from a *nolle prosequi;* thus, the appeal from the earlier indictment could not have been filed within the time prescribed for appeals from judgments of conviction. Because the operative facts of the proceedings which were terminated by the entry of the *nolle pros* formulate the lynchpin of the issues presented in appeal No. 2035, we have consolidated the appeals. The State, acknowledging that the proceedings ending in a *nolle prosequi* form the gravamen of the issues in this appeal, asks that we simply take judicial notice of those proceedings. Having consolidated the appeals for the purpose of reviewing both the proceedings which ended in the *nolle pros* and those ending in judgments of conviction, dismissing the appeal from the earlier indictment cannot preclude our consideration of the events underlying the earlier proceedings. We shall grant the State's motion to dismiss and take judicial notice of those proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant resided in Howard County with Natasha Hill and her daughter, Cashe M., the complainant, from September 1, 1999 to September 30, 2001. Appellant and Hill married in July 2001, but their marriage ended in divorce in July 2002. During the period that appellant lived with Hill and her daughter, appellant was responsible for caring for the young child in the morning and preparing her for school after Hill left for work. On several occasions, between September 1, 1999 and September 30, 1999, appellant would ask the victim, who at the time was five and six, to "get on top of him" whereupon "he would pull out his private." Appellant would then place his "penis on top of the child's private" and start moving her around. At other times, appellant would touch her on her butt ... vagina ... [and] breasts. On one occasion, appellant got in bed with the child and put "his private on [her] leg."

The proceedings against appellant commenced on January 28, 2004, with the return of the first indictment. On February 2, 2004, appellant's counsel entered his appearance. On February 4, 2004, appellant filed his initial demand for a speedy trial. On February 19, 2004, a trial date of June 8, 2004 was set at the scheduling conference. On March 2, 2004, the State requested a continuance based upon a conflict with another case. The defense did not object to the continuance but requested that counsel for both parties be consulted before the new trial date was set. On March 9, 2004, the continuance was granted and the new trial date was set for July 12, 2004 (Leasure, J.).

On April 2, 2004, appellant requested a continuance of the July 12, 2004 trial date due to a conflict with his counsel's vacation schedule and the State did not object. At the April 2nd hearing, appellant requested a trial date of August 2 or August 9, 2004, which dates were outside of the *Hicks*[2] deadline of July 26, 2004 and, pursuant to his request for postpone-

---

2. *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979).

ment, filed a *Hicks* waiver of Md. Rule 4–271. On April 6, 2004, appellant's continuance was granted and trial was set for August 9, 2004. On June 1, 2004, appellant appeared for a hearing in the Circuit Court for Howard County on appellant's motion to suppress; the court partially granted the motion and denied the remainder. On August 2, 2004, the State requested a continuance due to witness unavailability for the August 9, 2004 trial date; appellant objected, but the request was granted. On August 5, 2004, the clerk reset the trial date for September 20, 2004; however, the trial date was rescheduled for November 22, 2004, due to a religious holiday. On August 24, 2004, appellant filed another request for a speedy trial. On November 22, 2004, prior to the beginning of the trial, the State moved to amend the indictment to extend the dates of the offenses from September 1, 1999 to September 30, 2001; however, appellant objected and the court (Sweeney, J., presiding) denied the State's motion to amend. The State then entered *a nol pros* as to all charges.

On December 1, 2004, the grand jury returned a new indictment charging one count of child sexual abuse and three counts of third-degree sexual offense occurring between September 1, 1999 and September 30, 2001. On December 10, 2004, appellant again filed for a speedy trial. On January 6, 2005, at a scheduling conference, a new trial date of May 23, 2005 was set. On March 14, 2005, appellant again filed a motion to dismiss based on violations of Md. Rule 4–271 and on constitutional grounds. On April 15, 2005, the trial court heard this motion and deferred ruling, but ordered additional briefing. On May 13, 2005, after considering the additional information, the circuit court denied the motion. On May 23, 2005, the trial commenced.

The following is a recapitulation of the pertinent dates:

January 28, 2004: [Appellant] is indicted.

February 2, 2004: Counsel for [appellant] enters his appearance.

February 19, 2004: Trial date of June 8, 2004 set at scheduling conference.

March 2, 2004: State requests continuance due to conflict with another case. [Appellant] does not oppose continuance but requests that counsel be consulted before new trial date is set.

March 9, 2004: Request for continuance granted (Leasure, J.); clerk sets trial date of July 12, 2004.

April 2, 2004: [Appellant] requests continuance of July 12, 2004, trial date due to conflict. State does not oppose. [Appellant] requests trial dates of August 2, 2004, or August 9, 2004. [Appellant] files executed *"Hicks* Waiver and Waiver of Maryland Rule of 4–271."

April 6, 2004: [Appellant's] requested continuance granted. Trial set for August 9, 2004.

June 1, 2004: [Appellant] appears in Circuit Court for Howard County on hearing on Defendant's Motion to Suppress; court partially grants motion and denies remainder.

August 2, 2004: State requests continuance: State's witness unavailable. [Appellant] objects. State's request granted.

August 5, 2004: Clerk resets trial date to September 20, 2004. Trial date is rescheduled due to religious holiday.

November 22, 2004: Prior to beginning of trial, State seeks to amend indictment to correct dates of offenses to: September 1, 1999, to September 30, 2001. [Appellant] objects. Court (Sweeney, J., presiding) denies State's motion to amend. State enters *nolle pros* as to all charges.

December 1, 2004: [Appellant] indicted on one count of child sexual abuse and three counts of third degree sexual offense occurring between September 1, 1999, and September 30, 2001.

January 6, 2005: Trial date of May 23, 2005 set at scheduling conference.

May 23, 2005: Trial commences.

### LEGAL ANALYSIS

Appellant's first challenge on this appeal, captioned *HICKS* **/STATUTORY SPEEDY TRIAL,** is summarized in his brief:

[Appellant] suffered deprivation of his *Hicks*/Statutory speedy trial right. When the State moved to continue the original trial date, the matter was reset to a day on which trial counsel was unavailable. When the defense sought to remedy this situation, it was informed that the circuit court could offer no other dates within the *Hicks* window.

Thus, in the absence of any apparent good cause, [appellant] was forced into a situation where he either forfeited his statutory speedy trial protections or his right to counsel. Further compounding the problem was the subsequent delay in the proceedings based upon the State's late discovery that the offense dates in the original indictment where [sic] incorrect.

The statutory right to a speedy trial, Md.Code, Criminal Procedure Article § 6–103, provides:

(a) *Requirements for setting date.*—(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:

(i) the appearance of counsel; or

(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.

(2) The trial date may not be later than 180 days after the earlier of those events.

(b) *Change of date.*—(1) For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:

(i) on motion of a party; or

(ii) on the initiative of the circuit court.

(2) If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be made by the county administrative judge or that judge's designee for good cause shown.

(c) *Court rules.*—The Court of Appeals may adopt additional rules to carry out this section.

The right is also guaranteed by Maryland Rule 4–271:

a) Trial Date in Circuit Court. (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

The trial judge, in rejecting appellant's contention that his waiver, filed April 2, 2004, was invalid because it was signed by him under duress, denied his motion to dismiss, ruling:

[E]ither March 30th, 2004 or April 2nd, 2004, the [appellant] file[d] a request to postponement [sic] the trial due to a conflict with counsel's vacation. The State was not opposed. The [appellant] included in his request, specific reset dates of August 2nd or August 9th, 2004.

The [appellant] was notified that the requested dates extended beyond the *Hicks* date. The defendant, on April 1st, 2004, filed a written *Hicks* waiver, signed by the defendant and his attorney.

\*   \*   \*

The—there is a clear *Hicks* waiver here in this case. The [appellant] claims that it is involuntarily done or was done with the State not being fully candid with the defense.

I don't find that to invalidate the waiver in any way ...

In *State v. Brown*, 307 Md. 651, 655–59, 516 A.2d 965 (1986), the respondent was indicted for the illegal manufacture of

phencyclidine on March 14, 1983 and counsel entered his first appearance pursuant to former Rule 723 on March 28, 1983. The 180–day period, therefore, for bringing the case to trial expired on September 26, 1983. The trial of his case was originally scheduled for July 19, 1983; however, on July 7, 1983, Brown filed a document purporting to waive the 180–day requirement of then Rule 746.

Following the standard advisement that Brown had been advised of his right to a prompt disposition of his case, on the waiver form was language providing for a postponement of the July 19, 1983 trial date. It stated: "That counsel for the defendant, Stanley H. Needleman and the Assistant State's Attorney, Patrick J. Bell have agreed to the continuance of the trial date of July 19, 1983 for above entitled case." In July 1983, in response to a letter filed by defense counsel requesting a postponement due to a scheduling conflict, the county administrative judge granted the request and the trial was rescheduled for September 13, 1983, thirteen days before the expiration of the 180–day period. When the case was called for trial on September 13, 1983, the trial was postponed by the county administrative judge at the State's request, apparently because Brown had not been transported to court from the Baltimore City jail.

The case was again postponed on the rescheduled trial date, January 26, 1984, because of the State's failure again to transport Brown to court, then reset for March 15, 1984. On March 9, 1984, Brown filed motions to dismiss, asserting a violation of then Rule 746 and of his constitutional right to a speedy trial. In granting the motion to dismiss, when the case was called for trial on March 15, 1984, the trial judge stated: "The 180–day requirement was waived, but then the waiver became a nullity in the sense that a trial date was set for September 13th, so it would have been within the time period anyway. So the waiver no longer was a factor because the trial date was set within the time period. . . ."

After we affirmed the trial court's dismissal of Brown's indictment, *State v. Brown*, 61 Md.App. 411, 486 A.2d 813

(1985), the Court of Appeals granted *certiorari* to consider, *inter alia:* "Whether a defendant's express waiver, filed at about the same time as his request to postpone the trial date, becomes a nullity if the postponement does not in fact exceed the 180–day period." In reversing the decision in Brown's direct appeal, the Court explained:

In affirming the dismissal, the Court of Special Appeals concluded that Brown did not expressly consent to a trial date beyond the 180–day limit. As to Brown's "waiver" of the 180–day requirement, the Court of Special Appeals stated that "the effect of it was only to provide 'a continuance of the trial date of July 19, 1983.'" *State v. Brown,* *supra,* 61 Md.App. at 416, 486 A.2d 813. The court relied upon *Pennington v. State,* 299 Md. 23, 29, 472 A.2d 447, 450 (1984), quoting from *Pennington* as follows (61 Md.App. at 416, 486 A.2d 813, quoting 299 Md. at 29, 472 A.2d 447):

" '[W]hen a defendant's attorney on February 6th seeks a postponement of a March 11th trial date because of a scheduling conflict on that day, it is not reasonable to infer that he is seeking a trial date beyond June 7th [the 180th day] absent any evidence in the record supporting such inference.' "

With respect to the postponement of the trial on September 13, 1983, the Court of Special Appeals was "not persuaded that [County Administrative] Judge Williams was clearly erroneous when he granted the September 13 postponement." 61 Md.App. at 417, 486 A.2d 813. The appellate court held, however, that the extreme length of the delay between September 13, 1983, and the ultimate trial date of March 15, 1984, shifted the burden of justification to the State, and that the State had failed to justify the delay. *Id.* at 418, 486 A.2d 813. Therefore, the Court of Special Appeals decided that the trial judge did not err in dismissing the indictment.

The Brown Court then proceeded to distinguish between "waiver" and "consent" in the context of a *Hicks* analysis:

Preliminarily, we wish to emphasize that this case does not involve a defendant's "waiver" of the requirements of Art. 27, § 591, and former Rule 746. Despite the terminology used by both parties and by the courts below, the requirements of § 591 and Rule 746 cannot be rendered inoperable because a defendant purports to "waive" them. Neither the accused nor the prosecution nor the trial court are empowered to dispense with the mandates of § 591 and Rule 746.

We have repeatedly distinguished the requirements of § 591 and Rule 746 from a criminal defendant's state and federal constitutional rights to a speedy trial.

*Id.* at 656–57, 516 A.2d 965.

The *Brown* Court further explained that, unlike statutes or rules in other jurisdictions, the Maryland rules and statutory provisions were not intended to be codifications of the constitutional speedy trial right. *Id.* Their chief purpose is to operate as a "prophylactic measure" to further society's interest in the prompt disposition of criminal trials. *Id.* Citing *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356 (1979), the Court noted that the provisions of [then] § 591 and Rule 746 "are of mandatory application, binding upon prosecution and defense alike." *Id.* All postponements of a circuit court criminal trial date must be done in accordance with the requirements of [then] § 591 and Rule 746 and, thus, every postponement must be granted by the county administrative judge or his designee and must be supported by good cause. *Id.*

Of paramount import to our discussion is the following passage from Brown:

Finally, even when a circuit court criminal case has been postponed beyond the 180–day time limit in violation of § 591 and Rule 746, the sanction of dismissal is inapplicable *"where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746."* *State v. Hicks, supra,* 285 Md. at 335, 403 A.2d 356. *See Pennington v. State, supra,* 299 Md. at 28–29, 472 A.2d 447; *State v. Frazier, supra,* 298 Md. at 447 n.

17, 470 A.2d 1269; *Goins v. State, supra,* 293 Md. at 108, 442 A.2d 550. This is *not* because the defendant, by his action or consent, has "waived" the requirements of § 591 and Rule 746, so that the requirements are inapplicable. Rather, it is because *"[i]t would . . . be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation." State v. Hicks, supra,* 285 Md. at 335, 403 A.2d 356.

In sum, the principal issue in this case is not whether the defendant Brown "waived the requirements" of § 591 and Rule 746. The issue is whether Brown *"expressly consent[ed]* to a trial date in violation of Rule 746." *Hicks,* at 335, 403 A.2d 356.

*Id.* at 658–59, 516 A.2d 965 (emphasis added).

In the benchmark decision for which the Rule was named, the Court of Appeals declared in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979):

A second circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either *individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746.* It would, in our judgment, be entirely *inappropriate for the defendant to gain advantage* from a violation of the rule when he was a party to that violation. In this respect, the situation is analogous to the well-established principle that a criminal defendant who seeks or expressly consents to a mistrial, even though the required "manifest necessity" standard for the mistrial may have been absent, cannot take advantage of his own act and prevent a retrial on double jeopardy grounds. *See, e.g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 484–85, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Jourdan v. State,* 275 Md. 495, 508, 341 A.2d 388 (1975); *Cornish v. State,* 272 Md. 312, 318–19, 322 A.2d 880 (1974). (Emphasis added.)

To like effect, *see Farinholt v. State,* 299 Md. 32, 39–40, 472 A.2d 452 (1984), wherein the Court said:

We need not decide whether the postponement on October 27, 1981, complied with § 591 and Rule 746. If it be assumed arguendo that the October 27th postponement violated the statute and rule, either on the theory that the postponement was not effected by the administrative judge or his designee, or on the theory that good cause was lacking, the defendant could gain no advantage from such violation.

As explained in *State v. Hicks*, 285 Md. 310, 403 A.2d 356, on motion for reconsideration, 285 Md. 334 (1979):

In the instant case, the defendant's attorney both sought the postponement which continued the case beyond the 180–day deadline and expressly consented to a new trial date which was 196 days after arraignment.

\* \* \*

Turning to the principal issue, we agree with the State and the Court of Special Appeals that, after a case has already been postponed beyond the 180–day period, either in accordance with § 591 and Rule 746, or *upon the defendant's motion, or with the defendant's express consent, the dismissal sanction has no relevance to subsequent postponements of the trial date* unless the defendant's constitutional speedy trial right has been denied. In *State v. Frazier, supra,* 298 Md. at 428, 470 A.2d 1269, we stated:

In the *Hicks* opinion we indicated that every postponement of a circuit court criminal trial date was required to be granted by the administrative judge or his designee and only upon a showing of the requisite cause.

*Id.* at 39–40, 472 A.2d 452. (Emphasis added.)

Appellant's counsel entered his appearance on February 2, 2004; thus, in the absence of a finding of good cause by the county administrative judge or a waiver/consent given by appellant, the critical date by which the State was required to bring appellant's case to trial, under *Hicks*, was August 2, 2004. After the State requested, and was granted without objection, a continuance of the initial trial date of June 8, 2004 to July 12, 2004, appellant requested a continuance of the trial

date of July 12, 2004 to August 2, 2004 or August 9, 2004. At the April 2nd hearing wherein appellant requested the August trial dates, he executed a "Hicks Waiver and Waiver of Maryland Rule 4–271." His request for a continuance of his trial to August 9, 2004 was granted on April 6, 2004.

Notwithstanding that the trial date was scheduled beyond the 180–day period at appellant's behest, he nevertheless claims that he was forced into a Hobson's choice of forfeiting his speedy trial protections or his right to counsel. In noting that appellant's request to postpone the trial to August 2nd or August 9th, 2004 was due to a conflict with his counsel's vacation, the court ruled, "I don't find that to invalidate the waiver in any way. . . ." Nor do we.

▮▮▮ At the outset, a defendant's mere silence when a case is postponed to a date beyond 180 days, or his dilatory conduct contributing to a delay, does not ordinarily constitute express consent to a trial date in violation of § 591 and Rule 746. *Pennington v. State,* 299 Md. 23, 28, 472 A.2d 447 (1984); *State v. Frazier, supra,* 298 Md. at 447 n. 17, 470 A.2d 1269; *Goins v. State,* 293 Md. 97, 108, 442 A.2d 550 (1982). There must be some overt act evidencing an intent to consent to the delay. Once a defendant consents to a continuance beyond the 180–day period, however, there can be no circumvention of Maryland Rule 4–271 because the point of reference is the 180–day period and, assuming a case is not brought to trial within that time frame, the *sine qua non* of the Rule is not achieved.

▮▮▮ As the *Brown* Court observed, the chief purpose of Rule 4–271 is to further society's interest in the prompt disposition of criminal trials, rather than the codification of the constitutional right to a speedy trial. Appellant's counsel, in his request for a continuance filed on April 2, 2004, asked for dates on or beyond the 180–day time frame of *Hicks;* that deadline was August 2, 2004. The record reflects that, at no time during the hearing on his motion to suppress held on July 1, 2004, or at any earlier time, did appellant seek judicial intervention, object or contend that he had been coerced into

requesting or agreeing to the August 9, 2004 trial date. The sanction of dismissal is unavailable to a defendant who either, individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 4–271. *Hicks,* 285 at 334, 403 A.2d 356; *Brown,* 61 Md.App. at 415, 486 A.2d 813. Appellant, through his attorney, and because of his attorney's vacation schedule,[3] requested a trial date beyond the window prescribed by Maryland Rule 4–271 and *Hicks.* A grant of his motion to dismiss would be inappropriate because he would thereby "gain advantage from a violation of the rule when he was a party to that violation." *Hicks,* 285 Md. at 335, 403 A.2d 356. He cannot now claim that his rights under *Hicks* have been violated.

■ Alternatively, appellant contends that the entry of the *nol pros* "was for purposes of circumventing a ruling requiring the State to proceed on the November 22, 2004 trial date thereby rendering his waiver moot."

The State's response to appellant's alternative argument is: "In the instant case, the *nol pros* entered by the State occurred well after Jules consented to be tried outside the 180–day requirement of Maryland Rule 4–271. Moreover, the *nol pros* was not the product of the State's response to an administrative judge's ruling denying the State's request for continuance."

Citing the now well-established principle that "a decision to *nol pros* a case does not permit the defendant to reach back to the original charging document, when alleging a violation of Maryland Rule 4–271, unless the *nol pros* either had the actual effect or necessary effect of carrying the original trial date beyond the 180 days *and* was done to circumvent a ruling

---

**3.** With respect to requests for postponements occasioned by conflicts in counsel's schedule, *see also Fisher v. State,* 244 Ga.App. 113, 534 S.E.2d 845, 846–47 (2000)(holding that *"...* by filing the notice of conflict, [defendant's] counsel *effectively consented to a delay of the trial* and ... counsel proposed no resolution of the potential conflict in his notice or prior to trial, and [the court] cannot allow the extreme remedy afforded by OCGA § 17–7–170(a) to result from defense counsel's busy trial schedule.")

by an administrative judge exercising control over the court's calendar," the State has reproduced in its brief an extensive passage from our recent decision in *Wheeler v. State,* 165 Md.App. 210, 885 A.2d 351 (2005). In *Wheeler,* Judge Salmon engaged in a comprehensive analysis of Maryland appellate decisions delineating when, and under what circumstances, a *nol pros* will be deemed to operate to circumvent Maryland Rule 4–271.[4]

Positing that "the State's decision to *nol pros* the original indictment in *Glenn, Curley, Baker and Brown,* like the case at hand, did not come on the heels of a trial court's ruling addressing the scheduling of Jules's trial," the State argues these decisions are unhelpful to appellant. Distinguishing *Alther,* the State asserts, in that case, in denying the prosecution's request for consolidation, the court determined that it would not be able to postpone the case whereas, in the instant case, the court only ruled on a requested amendment to the indictment; hence, there was no ruling by the court controlling the court's calendar which the State sought to circumvent.

Based on the foregoing, the State contends that none of the cases cited by appellant are on point. We agree.

Appellant, in his brief, extracts general propositions from the Maryland decisions discussing the circumvention of Maryland Rule 4–271 by the entry of a *nol pros,* but, with the exception of *Curley, Alther* and *Price,* he fails to analogize the circumstances of the exercise of the *nol pros* in each of those cases with the *nol pros* in the case at hand. The gravamen of his argument is that the Court of Appeals in *Price* and this Court in *Alther* held that the State's entry of a *nol pros* was for the purpose of evading the consequences of its violation of a discovery order and the denial of a motion to consolidate,

---

4. *Alther v. State,* 157 Md.App. 316, 850 A.2d 1211 (2004), *Baker v. State,* 130 Md.App. 281, 745 A.2d 1142 (2000), *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), *cert. denied,* 348 Md. 334, 703 A.2d 1265 (1998) and the Court of Appeals' decisions in *Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984), *State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984), *State v. Price,* 385 Md. 261, 868 A.2d 252 (2005).

respectively. He bases this contention on the fact that the State entered a *nol pros* of the original indictment on November 22, 2004, immediately after the court denied its motion to amend that indictment.

As noted, the State responds, "There was no ruling by the Court controlling the court's calendar which the State, in this instance, sought to circumvent." The State is correct in that the ruling by the court in no way implicated the provisions of the statute and the rule, both of which prescribe the manner of postponing criminal cases beyond the 180–day period; they reference the authority conferred on the administrative judge and his/her designee and the requirement of a good cause finding. Although *Price* and *Alther* extend the instances where the exercise of a *nol pros* is proscribed beyond an attempt to circumvent an administrative judge's denial of a requested continuance by the State to an attempt to evade the denial of a procedural request, *i.e.,* motion to consolidate or discovery order, these developments are unavailing to appellant.

The short answer to appellant's argument is that the State entered a *nol pros* in *Price* and *Alther prior* to the passage of the 180–day period. The issue, thus, was whether it was shown that the *nol pros* had the purpose or effect of circumventing the requirements of § 6–103 or Rule 4–271. *Curley,* 299 Md. at 460–61, 474 A.2d at 508. In the case at hand, the *nol pros* was not in response to the denial of a continuance. Assuming that the State's entry of a *nol pros* on November 22, 2004 in response to the court's denial of its motion to amend the indictment is, in effect, an attempt to evade an adverse ruling by the court, it was not done in violation of Rule 4–271 or the statute, nor could it have been, having been entered three months and twenty days after the *Hicks* period had expired. Once appellant consented to a trial date on or after the Hicks period had expired, the provisions of the statute and rule were no longer implicated.

Regarding appellant's reliance on *Curley v. State, supra,* the parallel appellant seeks to draw is that, in that case, "it was

the defendant who requested the change in trial date that actually pushed the matter beyond the *Hicks* date. However, just like the *Curley* case, the trial court failed to offer a trial date within the 180–day window." Apparently anticipating that his reliance on *Curley* would evoke the response that his case may be distinguished on the basis that he executed a valid waiver, appellant, immediately after his reference to *Curley* in his brief, citing *Farinholt v. State,* 299 Md. 32, 472 A.2d 452 (1984), recognizes that, "Of course, as a general matter, it is true that where the defendant expressly waives his *Hicks* rights, dismissal will not be granted."

Appellant relies on *Curley* for the proposition that it was the defendant who requested a change in trial date which, he asserts, actually pushed the matter beyond the Hicks date. In *Curley,* the appellant's counsel, who had entered his appearance on September 22, 1980, by letter of November 12, 1980, requested a postponement of the scheduled November 20th trial date because of a scheduling conflict; he requested that someone from the clerk's office contact him regarding a new trial date. In accordance with the request, the trial date was postponed, but a new date was never assigned. Citing the request made by the family of the victim and the apparent inadmissibility of the blood-alcohol content test to prove charges of automobile manslaughter and driving while impaired, the State, on the last day for a trial under the then applicable statute and rule, entered a *nol pros.*

The Court of Appeals, in remanding the case with directions, held:

In the instant case, the nol pros clearly circumvented the requirements of § 591 and Rule 746. When the nol pros was entered on March 23, 1981, which was the final day for trial, it was too late for compliance with § 591 and Rule 746. At the time a trial date had not even been assigned. The case could not have been tried on March 23rd, as the defendant, his counsel, and witnesses were not present. There was no reason for them to have been present, as March 23rd was not the assigned trial date. As of the close of business on March 23rd, the case would have had to have

been dismissed for violation of § 591 and Rule 746. In reality, the prosecution had already lost this case under § 591 and Rule 746 when the nol pros was filed. Regardless of the prosecuting attorney's motives, the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days.

*Curley,* 299 Md. at 462–63, 474 A.2d 502.

Appellant accurately states that it was Curley who requested a change in the trial date. In contrast to the case at hand, Curley's request, however, did not "push the matter beyond the *Hicks* date." Counsel merely requested that someone from the clerk's office contact him regarding a new trial date. According to the *Curley* opinion, *id.* at 453 n. 4, 474 A.2d at 503–04, n. 4, not only did the record fail to disclose why a new trial date was not assigned, the record contained no documents or entries relating to the period between the November postponement and the above-mentioned last day for trial, March 23, 1981. Notwithstanding that inexplicably no trial date was scheduled in response to counsel's request, the *Curley* decision turned on the actions of the prosecutor in sending a letter notifying counsel for the appellant of the entry of the *nol pros* on the last day for trial under then § 591 and Rule 746. *Curley,* contrary to appellant's characterization, does not denominate the fact that no new trial date was ever assigned as "the trial court's fail[ure] to offer a date within the 180–day window." Moreover, in contrast to the instant case, the decision speaks directly to the question of Curley's consent at 299 Md. at 453, n. 3, 474 A.2d at 504, n. 3:

> The State has never claimed that Curley, by requesting a postponement of the November 20th trial date, either sought or expressly consented to a trial date in violation of § 591 and Rule 746. Moreover, any such contention would be inconsistent with our cases. *See, e.g., Pennington v. State,* 299 Md. 23, 29, 472 A.2d 447 (1984).

The above footnote from *Curley* controverts any contention that the decision stands for the proposition that there can be a

violation of the statute and rule notwithstanding a defendant's request for a trial date beyond the 180–day window.

The short answer to appellant's claim that the *nol pros* entered on November 22, 2004 was in response to a denial of a continuance in violation of Maryland Rule 4–271 or any other adverse ruling by the court is that, because it was entered three months and twenty days after the *Hicks* period had expired, it could not have had the necessary and actual effect of extending the trial date beyond the 180–day period. Once a defendant requests a trial date beyond that period and executes an effective waiver or the *Hicks* date is extended beyond the 180 days by a finding of good cause by the administrative judge, Maryland Rule 4–271 is no longer applicable.

Appellant, having affirmatively requested a trial date beyond the *Hicks* period, was, in effect, a party to a violation of the Rule. Consequently, the *nol pros,* entered on November 22, 2004, approximately three months and twenty days after the *Hicks* deadline had passed, is not subject to an analysis as to whether it was entered in an effort to circumvent the requirement that the defendant be brought to trial within 180–days.

Contrary to the determination that the entry of a *nol pros* was an attempt to evade the order of a circuit court in *Price, supra,* the answer to appellant's argument is provided by *Farinholt v. State,* 299 Md. at 40, 472 A.2d 452. After a case has been postponed beyond the 180–day period, either in accordance with § 6–103 or Rule 4–271, or upon the defendant's motion, or with the defendant's express consent, the dismissal sanction has no relevance to subsequent postponements of the trial date unless the defendant's constitutional speedy trial right has been denied. Stated otherwise, the one hundred eightieth day, under Rule 746 and § 6–103, is quintessentially the "bright line" beyond which dismissal is not available as a sanction once the trial date, in compliance with the rule and the statutory provision, has crossed that line.

Whenever the extension of the trial date beyond the prescribed period is the result of a legally unassailable finding by

the administrative judge or his/her designee that the cause for delay is "good," or where, as here, a defendant makes a motion, affirmatively requests or consents to a continuance beyond the 180 days, the inquiry as to the imposition of the sanction of dismissal under the statutory right to a speedy trial ends. We hold that the trial court properly concluded that there was no legally cognizable basis for appellant's assertion that he was "forced into a situation where he either forfeited his statutory speedy trial protections or his right to counsel" somehow resulting in his *Hicks* waiver having been made under duress. Having concluded that the waiver properly evidenced appellant's consent to a continuance beyond the 180–day period, the sanction of dismissal for the statutory right to a speedy trial is irrelevant to the subsequent postponements of appellant's case.

## II

Appellant's second contention is that he was denied his constitutional right to a speedy trial under the Sixth Amendment of the United States Constitution, Article 21 of the Maryland Declaration of Rights and the dictates of the Supreme Court decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The Court of Appeals reiterated the well-settled standard of review when considering a motion to dismiss based on the alleged denial of the right to a speedy trial in *Glover v. State,* 368 Md. 211, 220–21, 792 A.2d 1160 (2002):

In reviewing the judgment on a motion to dismiss for violation of the constitutional right to a speedy trial, we make our own independent constitutional analysis. *See State v. Bailey,* 319 Md. 392, 415, 572 A.2d 544, 554–55, *cert. denied,* 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87 (1990); *see also Crosby v. State,* 366 Md. 518, 526, 784 A.2d 1102, 1106 (2001)(stating that "when the issue is whether a constitutional right has been infringed, we make our own independent constitutional appraisal"); *Jones v. State,* 343 Md. 448, 457, 682 A.2d 248, 253 (1996); *Carroll v. State,* 335 Md. 723,

736, 646 A.2d 376, 383 (1994). We perform a *de novo* constitutional appraisal in light of the particular facts of the case at hand; in so doing, we accept a lower court's findings of fact unless clearly erroneous. *See Rowe v. State*, 363 Md. 424, 432, 769 A.2d 879, 883 (2001)(conducting a *de novo* review of a trial court's legal/constitutional conclusions with respect to a denial of a motion to suppress under the Fourth Amendment, but stating that a trial court's findings of fact are reviewed under a clearly erroneous standard); *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519, 525 (2000)(maintaining that this Court does not engage in *de novo* fact-finding); *State v. Ruben*, 127 Md.App. 430, 438, 732 A.2d 1004, 1008, *cert. denied*, 356 Md. 496, 740 A.2d 613 (1999).

In weighing the relevant factors, the Supreme Court observed:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

## LENGTH OF THE DELAY

■ The State and appellant agree that the length of the delay was nearly sixteen months (January 28, 2004 to May 23, 2005). In assessing the length of the delay, *Barker* teaches us:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of

the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182.

■ Considering the length of the delay, the trial court observed:

As to the constitutional claim, the Court must consider the length of the delay and the Court—the Court believes that the delay does reach the constitutional level that would require it to do further analysis and that would require it to do a balancing of the other factors, although the Court does not find this delay to be of any extraordinary length or—but believes it does trigger a review and a need to go further in this matter.

We concur with the court's assessment and, accordingly, turn to an analysis of the remaining factors.

### REASON FOR THE DELAY

In establishing benchmarks for weighing the reason for the delay, the *Barker* Court said:

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

■ Appellant, in his claim of a denial of the constitutional right to a speedy trial, focuses on perceived procedural

violations under Rule 4–271. In attempting to re-litigate the factors pertinent to an analysis of a violation of Rule 2–471, he asserts: "A State continuance request placed the defense in the position of having to choose between proceeding without counsel or acquiescing to a trial date outside of the 180–day *Hicks* guarantee." He then refers to the other driving force behind the delay as the State's entry of a *nol pros* just as the trial was about to begin on November 22, 2004. The period between the entry of counsel's appearance on February 2, 2004 and the first scheduled trial date on June 7, 2004, four and one half months, is accorded neutral status. *See Howell v. State,* 87 Md.App. 57, 82, 589 A.2d 90, *cert. denied,* 324 Md. 324, 597 A.2d 421 (1991)(the time between arrest and the first trial date is usually accorded neutral status). On March 3, 2004, the State requested a continuance due to a conflict with another case that had been postponed at the defendant's request, which was granted by the court. Appellant did not oppose the continuance but requested to be consulted on the issue of rescheduling. Without his consent, his trial was rescheduled to July 12, 2004. Because the vacation scheduled by appellant's counsel's conflicted with this date, he requested a continuance and that trial be rescheduled to either August 2, 2004 or August 9, 2004. In light of the specific request for the August trial date, this three week period of time is chargeable against appellant. *See Smith v. State,* 69 Md.App. 115, 123, 516 A.2d 985 (1986)(delay sought and receive by appellant is chargeable against him on appeal).

On August 2, 2004, the State sought a continuance of the August 9, 2004, trial date due to the unavailability of a State witness. The court granted the State's request and the trial was rescheduled. Because of defense counsel's commitments over religious holidays, attempts to schedule trial in September, 2004, were unsuccessful. This delay is chargeable against appellant, although not weighed heavily. Trial was finally rescheduled for November 22, 2004. The majority of this ten-week delay is chargeable to the State.

In ruling on appellant's motion to dismiss, the court found "that the record speaks for … itself … that there were both

prosecution and defense requests ... to postpone.... [T]hat while some of this [delay] can be assessed against the State, as the Court had recited in its recitation. Some is due to back and forth and the assignment system in the way the [sic] both defense and the State were handling this matter." Appellant avers that the period between February 2, 2004 and November 22, 2004, should be chargeable against the State because, he insists, the court erred in granting the State, a continuance over his objection of the August 9, 2004 to September 20, 2004 trial date. The court's finding, we think, is not clearly erroneous as it is adequately supported by the record.

As to the approximately six month delay, from the entry of the *nol pros* to trial on the subsequent indictment, the court noted,

I don't see as this was done for the purposes of delay, but due to their finding that their indictment was flawed, ...

But I do not see that their actions were further cause of delay but, were really the negligence in preparing the case in the original trial date. And the Court thinks that the record from November 22nd, clearly shows what was occurring with that delay.

The Court of Appeals has acknowledged that "different reasons for delay should be assigned different weights." *Jones v. State,* 279 Md. 1, 6, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977) (citations omitted). A continuum exists

whereby a deliberate attempt to hamper the defense would be weighed most heavily against the State, a prolongation due to negligence of the State would weigh less heavily against it, and a delay caused by a missing witness might be a neutral reason chargeable to neither party, and a delay attributable solely to the Defendant himself would not be used to support the conclusion that he was denied a speedy trial.

*Id.* at 6–7, 367 A.2d 1.

The two week delay between the date of entry of the *nol pros,* November 22, 2004, and the re-indictment on

December 1, 2004, was clearly attributable to the State. As in most of the previous requests by the State, we perceive no deliberate attempt to delay the trial and, therefore, the delay is accorded less weight. We shall accord neutral status to the subsequent delay between re-indictment and the May, 2005. *See Howell*, 87 Md.App. at 82, 589 A.2d 90.

## ASSERTION OF THE RIGHT

The *Barker* Court, in establishing guidelines for according weight to a third factor, explained:

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Id.* at 532, 92 S.Ct. 2182.

Appellant was indicted on January 28, 2004 and made a demand for a speedy trial five days later. He again made a demand on November 22, 2004 and on December 11, 2004. As the *Barker* Court instructs us, a gage is that the more severity of the deprivation, the more likely a defendant is to complain. We initially observe that the frequency of the demands for one who waited nearly sixteen months to be brought to trial are not extraordinary. Moreover, as the State points out, it was at the appellant's behest at the April 2, 2004 hearing that the case was postponed for four months. Nevertheless, it cannot be said that appellant stood idly by without registering his objections to the delay. Given that *Barker* instructs us to engage in a balancing of the four factors, we believe that this third factor weighs lightly in favor of dismissal.

## PREJUDICE TO THE DEFENDANT

Regarding this most important factor, the *Barker* Court said:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532, 92 S.Ct. 2182.

The trial court in evaluating the prejudice to appellant, concluded:

[T]he defendant has not been incarcerated, at least during the time ... we've gone over here. That is one of the main concerns in any speedy trial consideration....

But that's not the only concern. As the defendant notes, there is a presumption of prejudice that is created by the length of ... the delay alone. But actual prejudice may also result from the anxiety and concern and potential impairment of the defense, as well as from the pre-trial incarceration.

... There are, obviously, any criminal charges are pending, and particularly ones of this type of nature, that will create anxiety and concern, and the Court has factored that into the equation here.

The Court does not believe that there has been a showing of any substantial impairment of the defense's ability to defend this matter of [sic] to prepare for the matter.

On appeal, appellant's sole claim of prejudice is the presumptive prejudice of delay, and the actual personal prejudice to his finances and professional status. He does not point to actual prejudice to his defense, but rather asserts that he was personally harmed by the pending charges. Citing *Diver v. State*, 356 Md. 379, 739 A.2d 71 (1999), he asserts that this prejudice trumps any balancing in favor of the State with respect to the delay because the only delays in this case were caused by the State due to the "unavailability of a timely trial date ... and the failure of the prosecution to diligently prepare its case." In *Wilson*, however, we "accord[ed] great weight to the lack of any substantial prejudice resulting from the delay." 148 Md.App. at 609, 814 A.2d 1.

## CONCLUSION

It is beyond cavil that a sixteen-month delay, under *Barker*, triggers the gears of the Sixth Amendment, requiring a further analysis to determine whether there has been a constitutional violation of the right to a speedy trial. Under the circumstances extant, there is no suggestion that the State engaged in delay for purposes of seeking a strategic trial advantage or for any other improper motive. The reasons for the delay, chargeable in the main to the State in conjunction with the length of the delay, in the case *sub judice* might have tipped the scale in favor of dismissal, but for the fact that the two remaining factors, collectively weigh against the denial of the motion to dismiss. Although appellant made known his desire for a speedy trial shortly after he was indicted and again months later after a substantial period of the delay, it is fair to say that his demands to be tried were not constant and strident for long periods of time in between.

The scale, in this case, is tipped most heavily by the most important factor, prejudice to the accused. As the trial court aptly noted, appellant was not incarcerated during the sixteen-month delay. Moreover, appellant makes no claim that there has been any substantial impairment of his ability to prepare a defense. On this appeal, the only prejudice alleged by him is the presumptive prejudice of delay, and the alleged personal

prejudice to his finances and professional status caused by the pending criminal matter. He does not point to actual prejudice to his defense, but rather asserts that he was personally harmed by the pending charges. In light of the failure to demonstrate any substantial prejudice to his ability to prepare for his defense or of any oppressive pre-trial incarceration or other substantial prejudice, we cannot say that the trial court was clearly erroneous in its balancing of the *Barker* factors.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**