983 A.2d 160

**STATE of Maryland**

v.

**John Wesley HUNTLEY, Jr.**

**No. 157, Sept. Term, 2008.**

Court of Appeals of Maryland.

Nov. 12, 2009.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for Appellant.

Julia C. Schiller, Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

Under Maryland Code, Criminal Procedure Article § 6–103(a)[1] and Maryland Rule 4–271(a)(1),[2] the trial in a circuit court criminal prosecution must begin no later than 180 days after the earlier of (1) the entry of the appearance of the defendant's counsel or (2) the first appearance of the defendant before the circuit court. MD. CODE ANN. (2001, 2008 Repl.Vol.), CRIM. PROC. § 6–103(a); Md. Rule 4–271(a)(1). We have held that the time limitation prescribed by the statute and the rule is "mandatory," and that "dismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial" within the 180–day period,

---

**1.** Section 6–103(a) provides:

(a) Requirements for setting date.—(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:
(i) the appearance of counsel; or
(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.
(2) The trial date may not be later than 180 days after the earlier of those events.

**2.** Rule 4–271(a)(1) provides:

(a) Trial Date in Circuit Court. (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall not be later than 180 days after the earlier of those events.

absent " 'extraordinary cause' justifying a trial postponement." *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356, 360 (1979). Here, we must determine whether the *Hicks* sanction of dismissal for failure to comply with § 6–103(a) and Rule 4–271(a)(1) is appropriate where, after the trial court's denial of the State's motion to amend the dates contained in the charging document against John Wesley Huntley Jr.,[3] made on the 179th day of the 180–day period, the State files a nolle prosequi[4] of the original indictment, and subsequently re-indicts Huntley under a new charging document containing the correct dates. On this record, it was not.

## I. FACTS

On 27 August 2007, a Wicomico County grand jury indicted Huntley on charges of child sexual abuse. The original indictment alleged that the offenses took place between 1 September 2005 and 30 September 2006, based on statements from the child victim. Huntley first appeared in the Circuit Court on 6 September 2007. Therefore, to comply with the require-

---

**3.** Such a motion is brought under Md. Rule 4–204, which states:

"On motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required. If amendment of a charging document reasonably so requires, the court shall grant the defendant an extension of time or continuance."

**4.** A nolle prosequi, or nol pros, is an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment. *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981). We have observed that "[t]he entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent." *Id.* It is well settled that "while a nolle prosequi discharges the defendant on the charging document or count which was nolle prossed, and while it is a bar to any further prosecution under *that* charging document or count, a nolle prosequi is *not* an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count." *Id.* at 84, 427 A.2d at 1012–13 (emphasis in original).

ments of § 6–103(a) and Rule 4–271(a)(1), Huntley's trial had to begin by 4 March 2008.

After several postponements of earlier trial dates, the Circuit Court finally set a trial date of 3 March 2008, the day before the expiration of the 180–day period. On that date, the State moved to amend the indictment to change the date of the offenses to the period of 1 April 2003 to 31 July 2005. The State claimed that it received within the prior week new information [5] from the victim's family that suggested the dates alleged in the original indictment were incorrect. Huntley objected to the amendment.[6] The court denied the State's motion.[7] Rather than proceed to trial under the indictment containing the purported incorrect dates, the State dismissed the charges by entering a nol pros.

On 24 March 2008, three weeks later (and twenty days after the expiration of the original 180–day period), the Wicomico County grand jury re-indicted Huntley on the same charges as the original indictment, but provided as the date of the

---

5. Specifically, the Assistant State's Attorney told the Circuit Court at the motions hearing that:

   the State came into information late last week regarding the place, the place of offense, regarding rental time periods, those were cross referenced with other information that the victim gave regarding where she lived at the time of the offense, a different place than where the offense occurred. Comparing those two timeframes, the State has determined that the offenses, in fact, occurred between April 1, 2003 and July 31, 2005.

6. Huntley's counsel stated:

   Well, I think, well, actually what happened, Your Honor, was that due to the Defendant's witnesses the State became aware that these allegations could not have occurred during the timeframe that [the State] alleged. So now they have figured up another timeframe, and I've had zero time to look into that or to determine any kind of defense for this man.

7. During the hearing on the State's motion, the State made the Circuit Court aware of its intention to enter a nol pros if its motion were denied:

   **Court:** So if your motion is denied, your intention would be?
   **State's Attorney:** The State would be nol prossing, Your Honor.
   **Court:** All right.

offenses the period from 1 April 2003 to 31 July 2005. In response, Huntley, pursuant to Rule 4–271, filed a motion to dismiss the second indictment. After a hearing on 17 June 2008, the motions judge granted Huntley's motion, finding that "the purposes of the State's nol pros in March of 2008 . . . was to evade the effect of [the earlier judge's] ruling denying the motion to amend." The State appealed to the Court of Special Appeals. We issued a writ of certiorari, on our initiative, prior to the intermediate appellate court deciding the case. *State v. Huntley*, 407 Md. 275, 964 A.2d 675 (2009).[8]

## II. Discussion

■ Ordinarily, where criminal charges are nol prossed and identical charges are refiled, the 180–day time period for commencing trial, as mandated by § 6–103(a) and Rule 4–271(a)(1), begins to run anew after the refiling. *Curley v. State*, 299 Md. 449, 458, 474 A.2d 502, 506 (1984); *Baker v. State*, 130 Md.App. 281, 288, 745 A.2d 1142, 1146 (2000) (noting that the nol pros "is a legitimate and accepted way of doing prosecutorial business"). We stated that, where there is a nol pros and refiling of charges, "the only existing prosecution or case is that begun by the new charging document," and that it is this new prosecution for which trial must be timely commenced. *Curley*, 299 Md. at 460, 474 A.2d at 507.

■ In *Curley*, we identified two exceptions to this general rule. Where (1) the purpose of the State's nol pros, or (2) the necessary effect of its entry, is to circumvent the statute and rule governing time limits for trial, the 180–day period for trial begins with the triggering event under the initial prosecution, rather than beginning anew with the second prosecution.[9] *Id.* at 459, 474 A.2d at 507. If trial does not begin then

---

**8.** The sole issue framed by the State in its brief is: "When the State is forced to dismiss a defective indictment and seek a new indictment, does the *Hicks* period begin again when the new indictment is issued?"

**9.** The Dissenting Opinion chooses to analyze the State's nol pros of the initial indictment against Huntley under the two-pronged test announced in *Curley*, concluding that the purpose and necessary effect of

**294**

within 180–days of the first appearance of the defendant or defense counsel in the initial prosecution, the subsequent indictment must be dismissed under *Hicks*. *See Hicks,* 285 Md. at 318, 403 A.2d at 360. The remedy of dismissal is designed to implement the Legislature's policy behind the enactment of § 6–103(a), namely, to "obtain prompt disposition of criminal charges." [10] *Id.* at 316, 403 A.2d at 359.

---

the entry of nol pros was to circumvent the 180–day requirement prescribed by § 6–103(a) and Rule 4–271(a)(1). Thus, the Dissenting Opinion maintains, the Circuit Court applied appropriately the *Hicks* sanction of dismissal. As we shall discuss *infra,* an analysis under the two-pronged *Curley* test is inappropriate where, as here, the State's nol pros is based on a denial of its motion to amend a flawed indictment, absent a showing of bad faith or intent to delay by the State. The Dissenting Opinion proceeds down the wrong analytical path.

Even assuming *arguendo* that the Dissenting Opinion's analytical path were a correct choice, its conclusion that the State's nol pros in this case had the necessary effect or purpose of circumventing § 6–103(a) and Rule 4–271(a)(1) is flawed fatally. Regarding the "necessary effect" prong of the *Curley* test, this Court has noted that a nol pros has the necessary effect of an attempt to circumvent the requirements of § 6–103(a) and Rule 4–271(a)(1) only "when the alternative to the nol pros would be a dismissal of the case for failure to commence trial within 180 days. . . . Otherwise, under the teaching of the *Curley* case, it does not." *State v. Brown,* 341 Md. 609, 618, 672 A.2d 602, 607 (1996). As the Dissenting Opinion admits, instead of nol prossing the indictment, the State had the option of bringing the matter to the attention of the administrative judge or his or her designee to seek an extension of the 180–day requirement. Where such alternatives to nol pros are available to the State, the entry of nol pros does not have the "necessary effect" of circumventing § 6–103(a) and Rule 4–271(a)(1). As to the "purpose" prong of *Curley,* the Court of Special Appeals has observed that the State must be circumventing a ruling by an administrative judge (or his or her designee) which exercises control over the court's calendar, thus implicating the requirement of good cause for an extension of the 180–day requirement. *Jules v. State,* 171 Md.App. 458, 475–78, 910 A.2d 553, 563–64 (2006). In the instant case, the Circuit Court denied the State's motion to amend the flawed indictment. Although the Dissenting Opinion may be correct in its assertion that the State entered its nol pros in an attempt to circumvent the authority and decision of the Circuit Court, this record does not support that it sought to circumvent a ruling *exercising control over the court's calendar,* and, therefore, the "purpose" prong is not satisfied.

**10.** In *Hicks,* we noted that the Legislature's enactment of § 6–103(a) "manifested [its] recognition of the detrimental effects to our justice system which result from excessive delay in scheduling criminal cases

Without the *Curley* exceptions and the *Hicks* dismissal remedy, the State could evade the 180–day period, whenever it desired a trial postponement beyond 180 days, by merely nol prossing the case and refiling the same charges, a tactic that would make the requirements of the statute and rule "meaningless." *Curley,* 299 Md. at 461, 474 A.2d at 508.

In *Curley,* however, we noted that these exceptions will not apply where the prosecution acts "in good faith or so as to not 'evade' or 'circumvent' the requirements of the statute or rule setting a deadline for trial." *Id.* at 459, 474 A.2d at 507. Additionally, we opined that § 6–103(a) and Rule 4–271(a)(1) "were not intended to be codifications of the constitutional speedy trial right." *Id.* at 460, 474 A.2d at 507–08. Rather, "their chief purpose was to operate as a prophylactic measure 'to further society's interest in the prompt disposition of criminal trials by providing an impetus to remedy court congestion....'" *Id.* at 460, 474 A.2d at 508. This purpose "is ordinarily not violated when a prior prosecution against the defendant has been nol prossed and thus is removed from the court's docket, and when the trial under the new prosecution is commenced within the time period prescribed by" § 6–103(a) and Rule 4–271(a)(1). *Id.* at 460–61, 474 A.2d at 508.

■ In the present case, the State contends that an analysis of its nol pros under the *Curley* exceptions framework, and thus, any potential *Hicks* dismissal sanction, is inappropriate. It maintains that, because the nol pros was designed to respond to the trial court's denial of its motion to amend the indictment, rather than to evade or circumvent the 180–day deadline, the *Curley* exceptions and *Hicks* are not in play here. Instead, the State argues, the general rule should apply and the 180–day period should run anew from the date of Appellee's trial counsel's appearance under the second indictment. We agree with the State and hold that, where the State nol prosses an indictment based on the denial of its motion to

---

for trial and in postponing scheduled trials for inadequate reasons." *Hicks,* 285 Md. at 316, 403 A.2d at 359.

amend a flawed indictment, absent bad faith or evidence of the State's motive to delay trial, *Curley* and *Hicks* do not compel dismissal of the subsequent indictment.

Appellee relies on a number of cases, beginning with *Curley,* to bolster his contention that the purpose and necessary effect of the State's nol pros in this case was to circumvent the 180-day requirement in § 6-103(a) and Rule 4-271(a)(1). Specifically, Huntley directs our attention to *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), *Alther v. State,* 157 Md.App. 316, 850 A.2d 1211 (2004), and *State v. Price,* 385 Md. 261, 868 A.2d 252 (2005). It is clear to us, however, that his reliance on these cases is misplaced. In each case tendered, the State's proven purpose in nol prossing the charges was to evade the trial court's or administrative judge's denial of the State's motion for a continuance or postponement, or to force rescheduling of a trial date for which it was not ready to proceed.[11] It is distinctly those types of scenarios, where the

---

11. In *Curley,* the trial court granted the defendant's motion for a continuance, but failed to set a new trial date. *Curley,* 299 Md. at 452–53, 474 A.2d at 503–04. On the final day of the 180-day period, the State filed a motion for a continuance that was denied. *Id.* at 453, 474 A.2d at 504. In response, the State nol prossed the charges against Curley and re-indicted him on the identical charges three months later. *Id.* On Curley's appeal from the denial of his motion to dismiss the second indictment, we held that "the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days" because the nol pros was entered on the final day for trial and, due to the absence in court of the defendant, his counsel, and his witnesses (no new trial date having been set earlier, as noted *supra* ), the trial could not be held within the 180-day period. *Id.* at 462–63, 474 A.2d at 509.

In *Ross,* the State requested a continuance on the date set for trial because it had not received the laboratory analysis of drugs allegedly found in Ross' possession. *Ross,* 117 Md.App. at 361, 700 A.2d at 284. The administrative judge denied the motion, finding no good cause for a continuance and noting that the case could not be put back into the docket before the *Hicks* period expired. *Id.* As a result, the State nol prossed the charges and re-indicted Ross. *Id.* Analyzing the case under *Curley,* the Court of Special Appeals found that the State's nol pros of Ross' initial indictment had been entered to circumvent the 180-day limit. *Id.* at 370, 700 A.2d at 289. In doing so, the court emphasized that the trial court explicitly denied the State's motion for postponement for a lack of good cause. *Id.*

nol pros is used as a clear stand-in for a failed continuance request, that the prophylactic analysis of *Curley* and the sanction of *Hicks* were designed to address.[12]  The present

---

In *Alther*, one week prior to the scheduled trial date, the trial court denied the State's motion to consolidate the charges against Alther to include a first-degree rape charge that the State previously had eliminated.  *Alther*, 157 Md.App. at 319–20, 850 A.2d at 1213.  The trial court indicated that there would be no postponement of trial.  *Id.* On the trial date, the State nol prossed the charges and later re-indicted Alther under a new charging document that included all of the charges.  *Id.* at 320, 850 A.2d at 1214.  The Court of Special Appeals found that the State's nol pros effectively circumvented the trial court's denial of the consolidation motion, noting that "when a scheduling decision has been rendered by the circuit court, and the *nol pros* is entered as a means of circumventing that decision, the *nol pros* will have the purpose or necessary effect of evading the 180-day rule."  *Id.* at 335, 850 A.2d at 1222.

In *Price*, the State requested a continuance because of the unavailability of DNA test results that it needed for trial.  *Price*, 385 Md. at 265, 868 A.2d at 254.  The administrative judge denied the State's request and the State nol prossed the charges, re-indicting Price on the same charges five weeks later.  *Id.* at 266, 868 A.2d at 255.  On appeal, we found that the entry of nol pros had the purpose of circumventing the 180-day period because the State's clear intention in entering the nol pros was to evade the scheduled trial date and avoid the expiration of the 180-day period.  *Id.* at 278–79, 868 A.2d at 262–63.  We noted specifically that the intended objectives of the statute and the rule "are to afford reasonably prompt trials, and eliminate excessive scheduling delays and unjustifiable postponements."  *Id.* at 278, 868 A.2d at 262.

12.  This Court, and the Court of Special Appeals, have used the *Curley* test to decide a number of other cases dealing with attempted circumvention of the 180-day period by the State through the use of a nol pros.  In *State v. Brown*, 341 Md. 609, 672 A.2d 602 (1996), we applied the *Curley* two-pronged analysis where the State nol prossed the charges against Brown 43 days before the expiration of the 180-day deadline because it had not received yet the results of certain DNA testing necessary to comply with Brown's discovery motion and for the State's trial preparation.  *Id.* at 612, 672 A.2d at 604.  We found that Brown's subsequent re-indictment on the identical charges, following completion of the DNA testing, did not require dismissal because the necessary effect of the nol pros was not to circumvent the 180-day requirement because the State had alternatives to the nol pros, namely, to expedite the testing or to proceed without the DNA evidence.  *Id.* at 620, 672 A.2d at 607–08.

In *Baker v. State*, 130 Md.App. 281, 745 A.2d 1142 (2000), the State nol prossed the charges against Baker because it could not provide, before the date set for trial, the 20 days notice to defense counsel required for admission of certain of its hearsay evidence.  *Id.* at 296,

case, however, does not fit within this category, and thus, we maintain that *Curley* and *Hicks* do not compel dismissal here.

As noted earlier, § 6–103(a) and Rule 4–271(a)(1) are "designed to obtain prompt disposition of criminal charges." *Hicks*, 285 Md. at 316, 403 A.2d at 359. Where the State fails to try a defendant within the 180–day limit, absent a finding of good cause by the trial or administrative judge, the *Hicks* sanction of dismissal is appropriate. *See Price*, 385 Md. at 278, 868 A.2d at 262 (noting that "the mechanism of the Hicks Rule serves as a means of protecting society's interest in the efficient administration of justice" and that the objective of the statute and rule is to "eliminate excessive scheduling delays and unjustifiable postponements"). When the State seeks to try a case beyond the 180–day deadline through the strategic use of a nol pros, its actions equally are subject to the analysis discussed in *Curley*. *See Curley*, 299 Md. at 460, 474 A.2d at 508 (noting that the "chief purpose" of the statute and rule

---

745 A.2d at 1150. The Court of Special Appeals applied the *Curley* analysis and found that, because the State had alternatives to nol prossing the case, the necessary effect of the nol pros had not been to circumvent the 180–day rule. *Id.* at 302, 745 A.2d at 1153. That court noted that the "candid reason for entering the *nol pros* on the scheduled trial date was that the State was not yet ready to proceed to trial ... and was in desperate need of postponement." *Id.* at 294, 745 A.2d at 1149.

In *State v. Akopian*, 155 Md.App. 123, 841 A.2d 893 (2004), the intermediate appellate court applied the *Curley* test where the State, following denial of its request for a continuance because its key police witness was unavailable, nol prossed the charges against Akopian and re-indicted him. *Id.* at 126–28, 841 A.2d at 894–96. The intermediate court found that the State's nol pros neither had the purpose nor the necessary effect of circumventing the 180–day rule because it had been vigorous in its effort to bring the second prosecution within the original 180–day period. *Id.* at 140–41, 841 A.2d at 903.

In *Wheeler v. State*, 165 Md.App. 210, 885 A.2d 351 (2005), following the denial of its motion for a continuance, the State nol prossed the charges against Wheeler because it could not obtain DNA evidence necessary for its case prior to the expiration of the 180–day period. *Id.* at 216, 885 A.2d at 354–55. The Court of Special Appeals found that this action had the necessary effect of circumventing the *Hicks* rule because the State's nol pros essentially evaded the trial court's determination that there was no good cause to postpone the case and that trial should proceed as scheduled. *Id.* at 232, 885 A.2d at 364.

"was to operate as a prophylactic measure 'to further society's interest in the prompt disposition of criminal trials by providing an impetus to remedy court congestion. . . .' ").

Where the State instead is prepared to try the case on the trial date, pending approval of its motion to amend the flawed indictment, that motion is denied, and the State nol prosses the indictment in order to re-indict later on corrected charges, the significant concern of the statute, the rule, *Hicks,* and *Curley* regarding the "prompt disposition of charges" and the elimination of "excessive scheduling delays" is absent. In such a situation, the State has no obvious or secret motive to delay prosecution of the defendant beyond 180 days and there is no ruling by the trial court regarding its calendar that the State may be said to be circumventing. *See Jules v. State,* 171 Md.App. 458, 476, 910 A.2d 553, 563 (2006) (noting that the *Curley* analysis is inappropriate in a denial of a motion to amend case because there is no ruling by the trial court controlling the court's calendar which the State may seek to circumvent). In fact, the State presumably stands prepared to bring the defendant to trial on that day, so long as its motion to amend the indictment is granted. Where the amendment is denied, there is no trial to be postponed or continued, and the State's nol pros and re-indictment under corrected charges brings a new prosecution for which a new 180–day period begins.

This type of situation differs significantly from those presented in the cases relied on by Appellee because, here, the State could not try Huntley on the charges as they were stated in the charging document due to the incorrect breadth of the dates. In the continuance cases pointed to by Huntley, the State essentially nol prossed in an effort to extend the time period it had in which to prosecute each defendant, often in order to gather additional evidence or complete laboratory testing, purposes for which the statute and the rule were designed to foreclose. In the instance of a denied motion to amend the indictment, at least where the original indictment is legitimately flawed due to reasons assumedly beyond the control of the State, the State has no choice but to nol pros the

indictment and re-indict Huntley with a fresh set of charges. In such a case, the State cannot be seen as circumventing the trial court's scheduling power or extending the 180–day period in which to prosecute the defendant (the main concerns underlying the relevant portions of the *Hicks* and *Curley* decisions) because it is impossible, under the circumstances, for the State to prosecute the defendant under the unamended indictment. As such, the nol pros is not amenable to the *Curley* two-pronged exceptions analysis.[13]

Here, it appears that the State may have been prepared to try the case on the 179th day of the 180–day period and, in fact, would have begun trial that day had its motion to amend the charging document been granted.[14] There is no sugges-

---

**13.** *State v. Glenn*, 299 Md. 464, 474 A.2d 509 (1984), the companion case to *Curley*, applied the *Curley* two-pronged exceptions test to an entry of nol pros based on a flawed indictment. In *Glenn*, the State voluntarily nol prossed its original indictment, which failed to allege that the defendants "knowingly" committed the crime charged, because it believed that the defense would object to any amendment. *Id.* at 465, 474 A.2d at 510. The State re-indicted Glenn under a corrected charging document and Glenn moved to dismiss the second indictment as violative of *Hicks*. *Id.* at 466, 474 A.2d at 510. We analyzed the State's nol pros under the relevant *Curley* paradigm.

Although similar to the instant case, *Glenn* is distinguishable and does not undermine our conclusion that the *Curley* exceptions analysis is inappropriate where a nol pros is entered based on a flawed charging document. In *Glenn*, there was no denial of a motion to amend the indictment. Thus, the State made a unilateral, unforced decision that its indictment was flawed and that a nol pros was necessary and appropriate. Here, the trial court denied the State's motion to amend the dates in the indictment, leaving the State with an indictment containing allegations that it could not prove. Denial of the amendment created a situation essentially where trial could not proceed. Additionally, in *Glenn*, the flaw contained in the indictment resulted from culpable error on behalf of the State, namely, failure to include an essential element of the charge. Here, the flaw in the indictment, the incorrect dates, stemmed from the child victim's initial incorrect recollection of when the incidents happened. Upon being presented by the victim's parents with new information, the State immediately attempted to remedy the indictment, but its motion to amend was denied. We believe that such distinctions explain why a *Curley* exceptions analysis was appropriate in *Glenn*, but inapplicable to the present case.

**14.** This is not to say that it would have been an abuse of discretion on the part of the trial court were it to have granted Huntley a continuance

tion that the State utilized the nol pros with any motive in mind other than to correct the dates on the charging documents and bring Huntley to trial. The State was not refused a continuance, and it did not seek to evade any scheduling orders of the court due to missing evidence. Denying the State the right to try Appellee based solely on the trial court's determination that it would not allow amendment of the charging documents, particularly where the trial court appeared to understand that the State planned to nol pros and re-indict if its motion was denied, would punish unfairly the State in this case. Rather, because the concerns of the statute, the rule, *Hicks,* and *Curley* against trial delay and State manipulation of trial scheduling through the use of a nol pros are not implicated, the general rule would apply that, where a nol pros is entered and charges are refiled subsequently, the 180–day period for trial begins anew with the second indictment. We therefore hold that the *Hicks* sanction of dismissal, and the concurrent exceptions analysis of *Curley,* do not apply here where the State's nol pros is entered based on a denial of its motion to amend an indictment. As such, the motions judge erred, on the record before it, in granting Appellee's motion to dismiss the second indictment based on *Hicks, Curley,* § 6–103(a) and Rule 4–271(a)(1).

There is no direct suggestion in this case of any misconduct or ulterior motive to delay behind the State's entry of the nol pros. *See Curley,* 299 Md. at 459, 474 A.2d at 507 (noting that the purpose and necessary effect exceptions will not apply where "the prosecution [is] acting in 'good faith' or so as to not 'evade' or 'circumvent' the requirements of the statute or rule setting a deadline for trial"). There is no evidence that the State intentionally sought a flawed indictment originally in the hopes of nol prossing it and, in that way,

---

(had the trial procceded on 3 March 2008 based on an amended indictment) because of his complaint that the late change in the dates of the offenses left his counsel with no time to investigate or marshal a defense based on the new dates.

evading the 180–day requirement. Had there been evidence of such bad faith on the part of the State in its entry of a nol pros against Huntley, application of the *Curley* exceptions test to its actions and imposition of a *Hicks* dismissal may have been appropriate. Absent bad faith, however, the general rule applies and the State's entry of nol pros and subsequent re-indictment of the defendant on the same charges generally restarts the 180–day period.

The record does evince some disagreement as to whether the State should have discovered the incorrect breadth of the dates in the initial indictment before in fact it did, an issue that goes to the question of whether the State entered its nol pros here in good faith. At no point did the Circuit Court squarely confront this issue, and, as an appellate court, we may not engage in fact-finding on this point. Thus, we shall remand the case so that the Circuit Court may determine whether the State in fact exercised good faith when it entered the nol pros of the initial indictment. If it is so found, the reindictment should not be dismissed by reason of *Hicks*, *Curley*, or the pertinent rules.

## III. CONCLUSION

We hold that the *Curley* two-pronged exceptions test, and the concurrent *Hicks* sanction of dismissal, are inapplicable where the State's nol pros follows a denial of its motion to amend an indictment, at least where bad faith on the part of the State to delay is not shown. This Court designed the *Curley* exceptions in order to prevent the State from using its nol pros power to evade the 180–day deadline and delay trial of a defendant's case beyond 180 days. Where the State's nol pros instead is used to remedy a genuinely flawed indictment, the concerns of *Curley* are not present. The severe sanction of a *Hicks* dismissal is reserved for situations where the State seeks to circumvent the strictures of § 6–103(a) and Rule 4–271(a)(1) and unjustifiably delay a defendant's trial beyond 180–days. This is not such a case on the record as it exists

presently.[15]

## JUDGMENT OF THE CIRCUIT COURT OF WICOMI-CO COUNTY VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY WICOMICO COUNTY.

BELL, C.J., and GREENE, J., Dissent.

Dissenting Opinion by GREENE, J., which BELL, C.J., Joins.

The State failed to bring the case against Huntley to trial within the 180–day period as mandated by *State v. Hicks,* 285 Md. 310, 318, 403 A.2d 356, 360 (1979). As a result, the Circuit Court for Wicomico County was correct in dismissing the criminal charges. Here the State's action in nol prosing the indictment on the 179th day of the *Hicks*[1] period and reindicting Huntley on the same charges, after the *Hicks* period had expired, circumvented the requirements of Md. Code (2001, 2008 Repl.Vol.), § 6–103(a) of the Criminal Procedure Article[2] and Md. Rule 4–271(a)(1).[3] This conclusion is

---

**15.** We express no opinion as to whether the nol pros and subsequent re-indictment of Huntley violated his constitutional speedy trial rights. That issue was not presented to us in this case. Section 6–103(a) and Rule 4–271(a)(1) were not intended to codify the constitutional right to a speedy trial. Instead, that statute and rule merely act as a prophylactic remedy for unjustifiable trial delay by the trial court or the State.

**1.** The term *"Hicks," "Hicks* rule," or *"Hicks* requirements" is used as a shorthand for the 180–day requirement contained in Md.Code (2001, 2008 Repl.Vol.), § 6–103 of the Criminal Procedure Article and Md. Rule 4–271 and as explicated in this Court's decision in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979).

**2.** Section 6–103(a) of the Criminal Procedure Article, "Trial date," states:
(a) *Requirements for setting date.—*
(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:
(i) the appearance of counsel; or
(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.

consistent with our holdings in *Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984), and *State v. Price,* 385 Md. 261, 868 A.2d 252 (2005), and the Court of Special Appeals' holdings in *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), and *Alther v. State,* 157 Md.App. 316, 850 A.2d 1211 (2004).

Specifically, Huntley was indicted on August 27, 2007. His initial appearance in the Circuit Court was on September 6, 2007. Accordingly, the 180–day time period imposed under § 6–103 of the Criminal Procedure Article and Md. Rule 4–271 would expire on March 4, 2008. On March 3, 2008, the trial date, the State moved to amend the indictment to change the date of the offenses from the period September 1, 2005, through September 30, 2006, to the period April 1, 2003, through July 31, 2005. Huntley's attorney objected to the proposed amendment on the grounds that his trial preparation was based upon the specific dates alleged in the indictment and that to allow the amendment under the circumstances would prejudice his defense of Huntley. The attorney asserted further that the motivation for the State's decision to amend the dates alleged in the charging document was due to the potential testimony from Huntley's witnesses. According to the attorney, "the State became aware that these [offenses]

---

(2) The trial date may not be later than 180 days after the earlier of those events.

**3.** Md. Rule 4–271(a), "Trial date," states:

(a) **Trial date in circuit court.**

(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

could not have occurred during the timeframe that they alleged." Thus, the attorney deduced that "now they have figured up another timeframe."

It was the State's position, at the motion hearing, that if the court denied the motion to amend the indictment, the State would not be prepared to proceed to trial on March 3, 2008, and would therefore nol pros the charges. In response, Judge Beckstead, the trial judge, pointed out that the proposed amendment would not necessarily change the character of the offenses alleged. In reliance upon Md. Rule 4–204, the trial judge stated that as a result of "a motion of a party or on its own initiative the [c]ourt may at any time before verdict permit a charging document to be amended." The judge further suggested that the exception to the general rule is that "if the amendment changes the character of the offense charged, the consent of the parties is required." In addition, Judge Beckstead expressed concern that the timing of the State's request to amend the indictment would implicate the *Hicks* rule. Therefore, based upon her comments, Judge Beckstead apparently did not want to make a ruling that would unnecessarily cause the trial to be postponed. In the exercise of her discretion, Judge Beckstead denied the State's motion to amend the indictment. She explained:

This case was previously called earlier today, case 07–0833. The State had made a motion to amend the charging document, and the Court has heard from the State and defense as to the reasons for the amendment and as to the prejudice that would result. In exercising my discretion, I'm going to deny the request for the amendment. It is, in essence, a completely redesigned charging document. He's been held on these charges as well as other charges. We're now at 180 days. I am going to go ahead and deny your request to amend the charging document.

In response, the State informed the court that it would "nol pros . . . and . . . re-indict Mr. Huntley." Subsequently, on March 24, 2008, Huntley was indicted again, on the same charges, but the date of the alleged offenses was changed to the period April 1, 2003, through July 31, 2005. Thereafter,

Huntley moved to dismiss the new indictment pursuant to Rule 4–271.

At the motion hearing on Huntley's motion to dismiss the indictment, Judge Jackson granted Huntley's request. Huntley argued that the State was not prepared to go forward with trial on March 3, 2008, and the lack of adequate preparation was the State's reason for nol prossing the charges one day before *Hicks* expired. Thereafter, according to Huntley, approximately three weeks after entering the nol pros, the State re-indicted Huntley on the same charges, except that "the only difference [was] adding the dates of the offense that [the State] had sought in [its] motion to amend, which had been denied." Furthermore, according to Huntley, the State had ample time to investigate the case before filing the first indictment and ample time to investigate after filing the first indictment but before the March 3, 2008, trial date. Consequently, in Huntley's view, matters of timing as to filing the charging document and what allegations were contained in that document were all within the State's control.

Conversely, the State maintained that "[i]n this case there was a defect in the charging document" and that the State acted timely in addressing that defect. The prosecutor conceded that as early as January 2, 2008, the State knew from conversations with the victim that there was an issue as to the actual dates of the crime. In addition, the State informed the hearing judge that it knew from conversations with Huntley's defense counsel on February 14, 2008, "that there may be some issues with the dates [alleged in the indictment]." According to the State, as a result of the defect "there was no crime that occurred [during the period September 1, 2005, through September 30, 2006]" and the State acted promptly to remedy the defect by bringing the matter to the court's attention prior to trial. Because the State argued that the crimes actually occurred during the period April 1, 2003, through July 31, 2005, and the court failed to grant the State's motion to amend the indictment, the State maintains that it was compelled to nol pros the charges and file "an entirely different charging document."

After considering the arguments of counsel and the essential facts, Judge Jackson ruled, in reliance upon our decisions in *Price* and *Curley*, that there was a violation of the *Hicks* rule and that the appropriate sanction was dismissal of the charges. Judge Jackson explained that the State attempted to amend the indictment after 179 days had elapsed from the filing of the indictment. That motion was denied. Thereafter, the State filed new charges "alleging the same sex offenses against the same victim during a different time period, April of '03 through July of '05. That indictment was filed on March 24, 2008. That is well beyond [*Hicks* ]." Judge Jackson concluded that the purpose of the "State's nol pros in March of 2008 ... was to evade the effect of Judge Beckstead's ruling denying the motion to amend." In addition, Judge Jackson concluded that there was no defect in the charging document. He pointed out that "a defect in a pleading or charging document means not to contain necessary language, statutory language to charge an offense." A defect in the charging document does not mean, as Judge Jackson explained, that the indictment contained the wrong or incorrect dates.

In its brief, filed in this Court, the State acknowledges that the trial judge's ruling on the motion to amend was discretionary;[4] nonetheless, the State contends that "[o]nce the amendment was denied, [it] had no choice but to enter a nolle prosequi." Instead of nol prossing the indictment, since *Hicks* was an obvious problem in the case, the State, however, had the option of bringing the matter to the attention of the administrative judge or his designee for purposes of a continu-

---

4. Maryland Rule 4–204 provides that the court may permit a charging document to be amended at anytime before verdict unless the amendment changes the character of the offenses charged, in which case the parties' consent is required. *See Holbrook v. State*, 133 Md.App. 245, 260, 754 A.2d 1103, 1110 (2000) (holding that the trial court did not abuse its discretion permitting the State to amend an indictment to change the date that the defendant allegedly made a threat of arson); *Manuel v. State*, 85 Md.App. 1, 18–19, 581 A.2d 1287, 1295 (1990) (holding that the date that an indictment alleges that the criminal conduct occurred "may be amended in the court's discretion without changing the character of the offense").

ance. *See* Md. Rule 4–271. Of course, that would have required the State to convince the administrative judge that there was good cause to do so. Because the State elected to enter a nol pros, the administrative judge was never afforded an opportunity to make a good cause determination on the issue of changing the trial date to accommodate the State. To say that the State had no other option than to nol pros the charges is to ignore the point in the proceedings when the State sought to amend the charging document. The State's position also overlooks an important policy consideration underlying the *Hicks* rule: the need to afford a reasonably prompt trial by eliminating excessive scheduling delays and unjustifiable postponements. Although the State had discretion to enter a nol pros at anytime prior to entry of the verdict, it did not have the discretion to circumvent the requirements of *Hicks.*

In *Curley,* 299 Md. at 462, 474 A.2d at 508, we recognized, for the first time, an exception to the general rule that

> when a circuit court criminal case is nol prossed, and the [S]tate later has the same charges refiled, the 180–day period for trial prescribed by [*Hicks* ] ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution.

We held that

> [i]f, however, it is shown that the nol pros had the purpose or the effect of circumventing the requirements of [*Hicks* ], the 180–day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.

*Id.* at 462, 474 A.2d at 508.

Curley's original trial date was continued at his attorney's request; however, a new trial date was never set. On the 180th day, the State entered a nol pros of all the charges. According to the State, certain evidence was inadmissible and the victim's family did not wish to go forward with the case. Nonetheless, approximately three months later the State filed another charging document, charging the defendant with the

same offenses. Defense counsel filed motions to dismiss, which were denied. Upon our review of the case and in our application of the exception to the facts, we pointed out that when the nol pros was entered on the final day for trial it was too late to comply with the *Hicks* rule. We explained:

> At the time a trial date had not even been assigned. The case could not have been tried on March 23rd, as the defendant, his counsel, and witnesses were not present. There was no reason for them to have been present, as March 23rd was not the assigned trial date. As of the close of business on March 23rd, the case would have had to have been dismissed for violation of [*Hicks* ]. In reality, the prosecution had already lost this case under [*Hicks* ] when the nol pros was filed. Regardless of the prosecuting attorney's motives, the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days.

*Curley,* 299 Md. at 462, 474 A.2d at 508–09.

The appellee further points out in its brief, filed in this case, that we said, "[i]n *Curley,* [that] the motives of the State in entering a nol pros for the charges was irrelevant[,]" because the State had already lost its case when the nol pros was filed. In other words, because it was too late to comply with *Hicks,* "the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days." *Curley,* 299 Md. at 462–63, 474 A.2d at 509.

In *Ross,* the Court of Special Appeals concluded that the State's purpose in entering the nol pros was to circumvent the *Hicks* rule. On the trial date, the State requested a postponement because the drugs that were seized from the defendant had not yet been analyzed. The parties appeared before the administrative judge and the judge denied the State's request for a continuance. In denying the motion for a continuance, the administrative judge pointed out that the "docket is too crowded. [The case] cannot be put back in before Hicks runs, and I am not finding good cause[.]" *Ross,* 117 Md.App. at 361, 700 A.2d at 284. The State then entered a nol pros and filed a

new indictment approximately eight days later. The "trial on the second indictment began on April 25, 1996, ... outside the 180-day limit under the first indictment." *Id.* at 361, 700 A.2d at 284. Prior to trial, Ross moved to dismiss the charges against him on the ground that "the State had circumvented the 180-day time period by nol prossing the charges against him when its request for a continuance was denied." *Id.* The trial judge denied the motion to dismiss.

In reversing the denial of the motion to dismiss, the Court of Special Appeals explained that

a postponement was requested and denied and, as found by the administrative judge, the case could not be set in before the tolling of the 180-day limit. We again stress that in light of the administrative judge's supervision of the docket, we are unable to ignore his statement that the case could not be heard before expiration of the 180-day time period. In addition, immediately following the judge's ruling, the State entered a nol pros in the case. We can discern no clearer attempt to circumvent the time period dictated by [*Hicks* ].

*Ross,* 117 Md.App. at 370, 700 A.2d at 289.

In the present case, the State's motives in entering the nol pros were twofold: (a) to evade the effects of Judge Beckstead's ruling denying the motion to amend; and (b) to circumvent the requirements of *Hicks.* At the time of the hearing on the motion to amend, Judge Beckstead focused her attention on the reasons for the motion to amend and on the consequences of delaying the trial if the motion to amend were granted on the trial date. The trial judge posed the question to the State: "[I]s there some reason for the delay and the request for the charging document to be corrected?" The court further inquired whether "the State [has] given information to the defense so that it can prepare for today's amendment?" In addition, the trial judge asked: "[I]f your motion is denied, your intention would be?" In ruling on the motion to amend, Judge Beckstead made clear that the requirements of *Hicks* were taken into consideration. She said, because

"[w]e're now at 180 days[,]" she would deny the request to amend the charging document.

Immediately after Judge Beckstead raised the 180–day requirement and denied the motion to amend, the State entered a nol pros. As the intermediate appellate court recognized in *Ross*, considering the timing of the State's entry of the nol pros, there can be no clearer attempt to circumvent the 180–day limit. In my view, it makes no sense to suggest that the State intended to evade only the effects of Judge Beckstead's order denying the motion to amend, but did not intend to evade the effects of *Hicks*, when the next day was the 180th day under the *Hicks* calculation. We must consider the court's rulings in the context in which they were rendered. Before entering the nol pros, the State made no effort to prevent a violation of *Hicks*. The State did not bring the matter of rescheduling to the attention of the administrative judge, assuming that judge would have continued the trial date under the circumstances. The State's only alternative to a nol pros was to try the case. Moreover, there was no practical way, given the late date, the day before the *Hicks* expiration, that the State could have refiled and tried the case the next day after entering the nol pros. Having determined so close to the expiration of *Hicks* that the offenses occurred between April 1, 2003, and July 31, 2005, instead of September 1, 2005, through September 30, 2006, as alleged, the State's entry of the nol pros was no more than a tactical maneuver taking into consideration the insufficiency of its evidence.

The appellee contends that "[p]rior to seeking an indictment, the State had ample opportunity to investigate the case." The appellee further points out that "even after obtaining an indictment, the State had six months to continue its investigation of the case in preparation for trial." The appellee is correct. The State knew approximately two months before the March 3rd trial date that the evidence it had was in conflict with the allegations contained in the indictment. To say that it resolved the conflict in its evidence one week prior to trial and did not act to correct the indictment until the day of trial clearly does little to satisfy the State's obligation to

prepare its cases and bring them to trial promptly within the requirements of *Hicks*. At the time that the State made its motion to amend the dates in the indictment, the trial judge inquired and obtained the positions of both the State and defense counsel as to their positions on a continuance. The State was agreeable to a continuance if the amendment was granted, but Huntley was not. He never consented to, or waived his right to, a trial under *Hicks*. Ultimately, the trial judge denied the State's request to amend the dates in the indictment and the judge indicated that the parties were at the 180–day deadline. Judge Beckstead's denial of the motion to amend was, in effect, a mandate that the trial proceed, as scheduled, with no alterations to the charging document.

Although *Price* involved the Circuit Court's denial of the State's motion to continue the trial date in order to obtain DNA results, it is analogous to the present case because the State's purpose in entering the nol pros, in *Price*, was to circumvent the requirements of *Hicks*. The difference between *Price* and the present case is that in the former case, the administrative judge had an opportunity to speak before the State entered the nol pros. Moreover, in *Price*, the State conceded that it entered the nol pros to avoid the consequences resulting from a dismissal of the case for not going forward or an acquittal for not producing evidence. The State's motives in entering the nol pros were also relevant to the *Hicks* analysis. Likewise, in the present case, the State's motives in entering the nol pros are illuminating. In the present case, the State contends, however, that it was necessary to nol pros the first indictment in order to cure a defect in the charging document.

In the present case, however, a judicial determination was made that there was no defect in the indictment. Judge Jackson explained that the claim that the State alleged the wrong dates did not render the indictment defective. *See State v. Mulkey*, 316 Md. 475, 482, 560 A.2d 24, 27 (1989) (explaining that "the exact date of the offense is not an essential element, and is not constitutionally required to be set forth"). In addition, a judicial determination was made, as we

explained previously, that the State had to proceed to trial on the indictment as written. To evade that ruling and its mandate that the State proceed to trial on the evidence that it had, the State entered a nol pros in an attempt to circumvent the authority and decision of the court.

This case is unlike *State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984). In *Glenn,* prior to trial, the State determined that the charging documents were defective because they failed to allege that Glenn and his co-defendants knowingly distributed obscene materials, one of the elements of the offense for which they were charged. In *Glenn,* the record established "that the charges were nol prossed because of a legitimate belief that the charging documents were defective and ... the defendants' attorney would not agree to amendment of the charging documents." 299 Md. at 467, 474 A.2d at 511. The State nol prossed the charges on November 17, 1981; the 180–day period would not have expired until January 13, 1982. *Id.* at 465–66, 474 A.2d at 510. On the same day, the State refiled charges to correct what was indeed a defect in the charging documents. The defense moved to dismiss on the basis of *Hicks.* That motion was granted and the Court of Special Appeals affirmed. *Id.* at 466, 474 A.2d at 511. We granted certiorari and, after our review, we held that the prosecuting attorney's purpose in nol prossing the charges against Glenn was *not* to evade the 180–day rule but, rather, resulted from the defendants' refusal to allow the State to amend the charging documents. *Id.* at 467, 474 A.2d at 511. Accordingly, we explained that unlike the situation in *Curley,*

> the assigned trial date and the date of the nol pros[ ] was only 123 days after the arraignment and first appearance of counsel. If the cases had not been nol prossed, trial could have proceeded on November 17th. If the cases had not been nol prossed, and if for some reason trial had not proceeded when the cases were called on November 17th, there remained fifty-seven days before the expiration of the 180–day deadline. In *Curley,* if the case had not been nol

prossed on the 180th day, it necessarily would have been dismissed for a violation of [*Hicks* ].

*Id.* at 467, 474 A.2d at 511.

The reason that *Glenn* is distinguishable from the present case is that, in *Glenn,* when the State elected to nol pros the charges there remained 57 days before the expiration of the 180–day period. Accordingly, the State did not violate the *Hicks* mandate by nol prossing the charges. *See, Id.* at 467, 474 A.2d at 511. Clearly, if the State had nol prossed the charges in *Glenn,* as in the present case, the day prior to the expiration of *Hicks,* both the rationale of *Curley* and *Hicks* would apply and the appropriate sanction for evading *Hicks* would be a dismissal of the case. *Glenn,* perhaps more than *Curley,* demonstrates that the majority's analysis is simply incorrect in its efforts to distinguish *Curley* and *Glenn* and then conclude that "the *Curley* exceptions analysis is inappropriate where a nol pros is entered based on a flawed charging document." *See State v. Huntley,* 411 Md. 288, 300 n. 13, 983 A.2d 160, 167 n. 13 (2009). Reading *Curley* and *Glenn* together, leads to the inescapable conclusion that the same analysis the Court applied in *Curley* was applied in *Glenn* and should be applied in the present case.

In the instant case, Judge Beckstead acted within her discretion and denied the motion to amend the indictment. There is no contention that the trial judge abused her discretion in denying that motion. This is similar to the situation in *Alther,* 157 Md.App. at 337, 850 A.2d at 1224, a case in which the State entered a nol pros, but not to cure a defect in the charging document; instead, it was entered to evade the court's order denying the consolidation of charges. The Court of Special Appeals held in *Alther* that the "necessary effect" of entering the nol pros, "four days before the end of the 180 day period, was to circumvent the 180–day rule." *Id.* at 338, 850 A.2d at 1224. The alternative to entering the nol pros in that case was a dismissal for failure to comply with *Hicks. Id.*

Given the alternatives available to the State, in the present case, the nol pros was intended to or did circumvent the

requirements of *Hicks*. If the State had been given that which it requested, there would have been no reason for it to nol pros the charges and refile the indictment. The majority opinion suggests that the trial judge's "[d]enial of the amendment created a situation essentially where the trial could not proceed." *See State v. Huntley*, 411 Md. at 300 n. 13, 983 A.2d at 167 n. 13 (2009). Also, according to the majority, "it would not have been an abuse of discretion on the part of the trial court were it to have granted Huntley a continuance." *See State v. Huntley*, 411 Md. at 300–01 n. 14, 983 A.2d at 168 n. 14 (2009). The majority is incorrect on both points. First, the court's ruling on the motion to amend did not prevent the State from going forward with its case. For example, nothing prevented the State from requesting an amendment to the dates in the charging document, by interlineation, if necessary, once it presented its evidence at trial. Second, only the administrative judge or his designee may grant a continuance of the trial. The trial judge had no authority to continue the trial date, unless the trial judge was also the administrative judge or his designee for postponements. The record, in the present case, however, does not suggest that the trial judge was also the administrative judge or his designee for postponements. The trial date in this case was March 3, 2008. Therefore, only the administrative judge had authority to continue the trial to a date outside the requirements of *Hicks*. As we explained in *Curley*, if "whenever the [S]tate desired a trial postponement beyond 180 days, it could nol pros the case, refile the same charges, and thereby cause the time period to start running anew, the requirements of [*Hicks* ] would largely be rendered meaningless." *Curley*, 299 Md. at 461, 474 A.2d at 508.

For example, if the State had been dissatisfied with a ruling of the trial court with regard to a motion to amend, made one or two months prior to the expiration of the *Hicks* date, there probably would have been adequate time to re-indict before the 179th day or even the 180th day and thereby try the case within *Hicks*. Here, the State did not take that precaution and entered a nolle prosequi on the 179th day. As the hearing

court found and the State concedes, the State's purpose in entering a nolle prosequi was to circumvent Judge Beckstead's ruling denying the motion to amend. Thus, the entry of the nol pros was not a legitimate option for the State. Even assuming for the sake of argument that the State's purpose in entering the nol pros was not to circumvent the requirements of *Hicks*, it is quite obvious that by entering the nol pros on the last day prior to the expiration of *Hicks*, that the necessary effect of entering the nol pros, regardless of motive, circumvented *Hicks*. Therefore, I would affirm the judgment of the Circuit Court for Wicomico County.

Accordingly, for the reasons stated herein, I respectfully dissent.

Chief Judge BELL joins in the views herein expressed.